IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WHITSERVE LLC, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> DROPBOX, INC., ) <br> ) <br> *Dropbox.* ) <br> ) | Civ. No. 18-665-CFC |

**MEMORANDUM**

Plaintiff WhitServe LLC (WhitServe) alleges that Defendant Dropbox, Inc. (Dropbox) infringes U.S. Patent No. 8,812,437 ("the #437 patent") titled "Onsite Backup for Third Party Internet-Based Systems." The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Dropbox has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the #437 patent recites patent ineligible subject matter under 35 U.S.C. § 101. D.I. 9. For the reasons discussed below, I will grant Dropbox's motion.

I. **BACKGROUND**

The #437 patent states that "[i]n an effort to improve customer service, companies are increasingly moving their data processing systems onto the Internet

and providing web interfaces for their customers to see and manipulate their own data." D.I. 1-1 at 1:13-16. At the same time, companies are outsourcing the processing of customers' data to third parties, which "cuts costs and relieves companies of having to hire software expertise [and] ... having to maintain hardware." *Id.* at 1:21-28.

One problem with outsourcing data processing to third parties that use Internet-based systems is "the safeguarding of their and their clients' data." *Id.* at 1:32-34. "Another difficulty companies face in deciding [whether] to outsource is continuity of service if, for example, the third party were to go out of business." *Id.* at 1:38-40. The #437 patent purports to solve these problems by disclosing, among other things, "[a] system for onsite backup for internet-based data processing systems." *Id.* at 3:20, 4:13-14. The system is comprised of a "central computer," "a client computer," a "communications link" between each computer and the internet, and a database containing a plurality of data records. *Id.* at Abstract. "Software executing on the central computer receives a data backup request, and ... transmits the data backup to the client computer." *Id.* There are no other details in the patent regarding how the system works.

There are three independent claims in the #437 patent: claims 1, 10, and 19. WhitServe contends that Dropbox has infringed claims 10 and 19. Claim 10, which has been reformatted for clarity, recites:

A system for onsite backup for internet-based data processing systems, comprising:

a *central computer* accessible by at least one client computer at a client site via the Internet for outsourced data processing;

at least one *database* containing a plurality of data records accessible by said central computer, the plurality of data records including internet-based data that is modifiable over the Internet from the client computer;

*data processing software* executing on said central computer for outsourcing data processing to the Internet from the at least one client computer, said data processing software modifying the internet-based data in the plurality of data records according to instructions received from the at least one client computer, the modifying including updating and deleting the internet-based data in the plurality of data records;

a *client data request*, sent from at least one client computer via the Internet to said central computer, the client data request comprising a request for a backup copy of at least one of the plurality of data records;

*software* executing on said central computer *to receive*, via the Internet from the at least one client computer, *the request* for a backup copy of at least one of the plurality of data records including the internet-based data in the at least one of the plurality of data records that has been modified by said data processing software; and

*software* executing on said central computer *to transmit the backup copy* of the at least one of the plurality of data record including the internet-based data in the at least one of the plurality of data records that has been modified by said data processing software to the client site for storage of the internet-based data from the at least one of the plurality of data record in a location accessible via the at least one client computer;

wherein the location is accessible by the at least one client computer without using the Internet.

3

*Id.* at 4:14-50.

Claim 1 is essentially the same as claim 10 except that the internet-based data processing system is "managed by a third-party." *Id.* at 3:20, 3:33. Claim 19 rewrites claim 10 as a pure software claim. The preamble to claim 19 recites: "[a] non-transient computer readable medium containing software executed by at least one processor for causing a central computer to perform the following steps." *Id.* at 5:7-9. The software (which is written to operate on the "central computer") performs the same steps as the system recited in claim 10. The dependent claims narrow the independent claims by, for example, specifying the location of the central computer (a third-party site or not the client site), or adding a requirement that the data be reformatted, encrypted, or susceptible to manipulation using a web interface. *See, e.g., id.* at 3:53-4:13.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint need not contain "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in

the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The Court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

**III. DISCUSSION**

Dropbox has moved to dismiss the complaint on the grounds that the asserted claims in the #437 patent are directed to an abstract idea and, therefore, ineligible for patent protection under 35 U.S.C. § 101. WhitServe argues that the motion should be denied because: (1) the #437 patent is eligible under § 101; (2) the #437 patent does not preempt the field of data storage and data modification; (3) Dropbox failed to meet its burden of proof on a motion to dismiss; and (4) the Federal Circuit and United States Patent and Trademark Office ("USPTO") have already determined that the #437 patent is not abstract. D.I. 13.

**A. Patent Eligibility under *Alice***

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

5

There are three judicially-created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions to patentable subject matter arise from the concern that the monopolization of "these basic tools of scientific and technological work" "might tend to impede innovation more than it would tend to promote it." *Id.* (internal quotation marks and citations omitted).

"[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept." *Id.* at 217. "[A]pplication[s] of such concepts to a new and useful end ... remain eligible for patent protection." *Id.* (internal quotation marks and citations omitted). But in order "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (emphasis omitted).

In *Alice*, the Supreme Court made clear that the framework laid out in *Mayo* for determining if a patent claims eligible subject matter involves two steps. The Court must first determine whether the patent's claims are drawn to a patent-ineligible concept — i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? 573 U.S. at 217. If the answer to this question is

no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the Court must proceed to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept — *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (internal quotations and citations omitted).[1]

1. *Alice* **Step One**

Dropbox contends that the #437 patent is directed to the abstract idea of backing up data records. D.I. 10 at 10. I agree. For the purposes of this motion, I will treat claim 10 of the #437 patent as representative.[2]

---

[1] The Court in *Alice* literally said that this two-step framework is "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. But as a matter of logic, I do not see how the first step of the *Alice/Mayo* framework can distinguish (or even help to distinguish) patents in terms of these two categories (i.e., the categories of (1) "patents that claim laws of nature, natural phenomena, and abstract ideas" and (2) patents "that claim patent-eligible applications of [laws of nature, natural phenomena, and abstract ideas]"). *Both* categories *by definition* claim laws of nature, natural phenomena, and abstract ideas; and only one of *Alice*'s steps (i.e., the second, "inventive concept" step) could distinguish the two categories. I therefore understand *Alice*'s two-step framework to be the framework by which courts are to distinguish patents that claim eligible subject matter under § 101 from patents that do not claim eligible subject matter under § 101.

[2] Courts may treat a claim as representative where: (i) the claims are "substantially similar and linked to the same abstract idea," *Content Extraction & Transmission*

7

As the preamble states, claim 10 is a "system for onsite backup for internet-based data." D.I. 1-1 at 4:14-15. "It is undisputed that institutions have long backed up data in general." *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017). Thus, courts have frequently found that claims directed to copying and storing information for backup purposes are directed to abstract ideas. *See id.* (claim for copying data to remote location directed to "the abstract idea of backing up data"); *Orcinus Holdings, LLC v. Synchronoss Tech., Inc.*, 379 F. Supp. 3d 857, 861 (N.D. Cal. 2019), *appeal docketed sub nom.*, *Dropbox, Inc. v. Synchronoss Tech., Inc.*, No. 19-1823 (Fed. Cir. Apr. 30, 2019) (claim for "backing up data stored on a mobile [device]" is directed to an abstract idea); *Egenera, Inc. v. Cisco Sys., Inc.*, 234 F. Supp. 3d 331, 346 (D. Mass. 2017) ("setting up a disaster recovery backup site" is an abstract idea); *see also Uniloc USA, Inc. v. Big Fish Games, Inc.*, 320 F. Supp. 3d 1178, 1183 (W.D. Wash. 2018)

---

*LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014), and (ii) "the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). As the "Background" section of this memorandum demonstrates, *see supra* Section I, the claims of the #437 patent are substantially similar and directed to the same abstract idea. In addition, WhitServe did not challenge Dropbox's treatment of claim 10 as representative or present any meaningful argument for the distinctive significance of any claim limitation not found in claim 10. *See* D.I. 10 at 10-20; D.I. 13 at 11-20.

(claim directed to "the concept of copying information from one location to another" is abstract).

WhitServe argues that Dropbox has oversimplified the claims, by omitting the specific structures and connections required by the claim. D.I. 13 at 11-12, 16. Claim 10, however, recites only generic computer components performing routine computer functions. Specifically, there is a "computer," a "database," and "data processing software," and the Internet. D.I. 1-1 at 4:14-50. The patents provide no technical details or limitations with respect to the components. Instead, the components are described in terms of routine, conventional functions. The "computer" can be "central" or belong to a "client." *Id.* at 4:16-31. The database must "contain[] a plurality of data records." *Id.* at 4:19. The software is capable of "modifying" the data records by "updating and deleting" the data. *Id.* at 4:26-30. The computers are capable of sending over the internet a request for a copy of data records, receiving the request, and transmitting a copy of the requested data. *Id.* at 4:31-41.

Storing data is a "generic computer function[]." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). "Updating data" is a "routine and conventional computer function." *Location Based Serv., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1055 (N.D. Cal. 2017). "[S]ending and receiving information" over a network are "routine computer functions." *Intellectual*

*Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017). Accordingly, courts have repeatedly found that the specific components recited here were not enough to render the claims nonabstract. *See Alice*, 134 S. Ct. at 2360 (claims reciting "a general-purpose digital computer" are nevertheless "directed to" an abstract idea); *Mortg. Grader*, 811 F.3d at 1324–25 (claims reciting an "interface," "network," and a "database" are nevertheless directed to an abstract idea); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016) ("performance of an abstract idea on the Internet is abstract").

Finally, courts must distinguish between claims "directed to an improvement to computer functionality"—which are not abstract—and claims "simply adding conventional computer components to well-known business practices"—which are abstract. *TLI Commc'ns*, 823 F.3d at 612 (quoting *Enfish*, 822 F.3d at 1335). WhitServe argues that the claims of the #437 patent are directed to "a specific improvement over the prior art in the field of data storage and data processing," namely, "offering multiple users at various locations Internet-based data processing capabilities while allowing the ability to edit and modify and transmit data records and further safeguard the data at a location without internet." D.I. 13 at 10, 14.

The claims, however, do not discuss the technological processes underlying the idea of allowing multiple users at various locations to modify, transmit, and

10

safeguard data. Instead, the claims rely on the ordinary storage and transmission capabilities of computers within a network and apply that ordinary functionality in the particular context of onsite backup. Thus, I find that the claims are not directed to an improvement in computer functionality. *See Intellectual Ventures*, 234 F. Supp. 3d at 607–08 (finding that claims are not directed to improving computer functionality when they are only relying on ordinary components to perform routine functions in a particular environment).

### 2. *Alice* Step Two

In step two of *Alice*, the elements of the claim are considered, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *Content Extraction*, 776 F.3d at 1347. To save a patent at step two, an inventive concept "must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

WhitServe argues that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." D.I. 13 at 17 (quoting *Bascom Global Internet Serv., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Specifically, WhitServe suggests that backup data was traditionally stored offsite and the #437 patent improves on this arrangement by taking the nonconventional step of storing backup data onsite.

I find nothing inventive in how the #437 patent arranges the storage of backup data. It is a well-understood practice of human organization that backup copies are stored in a location separate and distinct from the original location. So, where the original location is onsite, it is conventional for the backup location to be offsite. This is the common scenario for companies that create disaster recovery plans for critical data.

But where the original location is offsite, it is equally common for the backup location to be onsite. This is the scenario where humans secure critical documents, such as wills, deeds, passports, or birth certificates, in a bank safe deposit box, but keep a copy at home for quick reference when needed. Similarly, every lawyer who has downloaded a document from the court's case docket on CM/ECF and saved the copy to their local computer has used the internet to create an onsite backup copy of offsite data that comes in handy on those days when CM/ECF is not accessible or convenient. Accordingly, the #437 patent is not saved by step two of *Alice*. Dropbox's motion to dismiss is granted, because the #437 patent is directed to an abstract idea and, therefore, not eligible for patent protection pursuant to 35 U.S.C. § 101.

**B. Preemption**

According to WhitServe, Dropbox's motion should be denied, because it did not address the issue of preemption. D.I. 13 at 9-10. As the Supreme Court

explained in *Alice*, granting a patent for laws of nature, natural phenomena, and abstract ideas would preempt the use of the "basic tools of scientific and technological work" that are the "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354. Such patents would impede innovation rather than promoting it, as patent laws intend. *Id.*

Preemption, however, is not a separate and independent test under *Alice*. It is simply a "concern that undergirds [the court's] § 101 jurisprudence." *Id.* at 2358. In other words, "preemption *may* signal patent ineligible subject matter," *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (emphasis added), "but it is not *necessary*" to finding that a patent is ineligible under § 101, *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 752 (Fed. Cir. 2019). "[W]here a patent's claims are deemed only to disclose patent ineligible subject matter under the *Alice* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Two-Way Media*, 874 F.3d at 1339; *see also Ariosa Diagnostics*, 788 F.3d at 1379 ("[Q]uestions on preemption are inherent in and resolved by the § 101 analysis."). Thus, Dropbox was not required to raise and address the issue of preemption, as WhitServe contends.

## C. Deciding § 101 Motions to Dismiss Without Evidence

According to WhitServe, the Court must deny Dropbox's motion to dismiss, because Dropbox has "not discussed or provided any evidence (no inventor testimony, no expert declarations, no citations to learned treatises, etc.)" to meet its burden of proving that the claims were "well-understood, routine or conventional" at the time of the patent. D.I. 13 at 6-9 (emphasis omitted).

The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (stating that claims may be found "patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for extraneous fact finding outside the record" (internal quotation marks omitted)).

Improvements in technology described in the complaint or the patent specification may create fact questions which preclude resolving the eligibility question as a matter of law. *See, e.g., Berkheimer*, 881 F.3d at 1370 (claims reciting "a specific method of archiving that, according to the specification,

14

provides benefits that improve computer functionality" raised a factual dispute regarding whether the claims recited only "well-understood, routine, and conventional" computer functions); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed. Cir. 2018) (vacating dismissal and reversing denial of leave where the proposed second amended complaint contained "numerous," "specific," and "concrete" factual allegations directed to problems in computer functionality that were solved by the patented inventions).

There are, however, no concrete or specific allegations in WhitServe's complaint or discussions in the specification of the #437 patent regarding improvements in technology. Instead, for the reasons discussed above, the claims of the #437 patent are not directed to an improvement in computer functioning. Accordingly, there is no factual issue that would preclude me from deciding the patent eligibility of the #437 patent on a motion to dismiss.

### D. Prior Decisions by the Federal Circuit and the USPTO

WhitServe asks the Court to defer to the decisions of the Federal Circuit and the USPTO that have, according to WhitServe, already found that the #437 patent is not abstract. The precedential value of each institution's decision is addressed in turn.

### 1. The Federal Circuit

In *WhitServe LLC v. Computer Packages, Inc.*, the Federal Circuit reviewed a jury's infringement and validity findings regarding four patents: US Patent Nos. 6,981,007 (the #007 patent); 5,895,468 (the #468 patent); 6,049,801 (the #801 patent); and 6,182,078 (the #078 patent). 694 F.3d 10, 17 (Fed. Cir. 2012). The #007 patent is in the same family as the patent at issue in this case, and the other three patents are unrelated. D.I. 13 at 4. The issue of patent eligibility was not before the court. Nevertheless, Judge Mayer stated in a dissent that the #468 and #078 patents should be found invalid under 35 U.S.C. § 101, because they were directed to an abstract idea. *Computer Packages*, 694 F.3d at 39 (Mayer, J. dissenting). From this set of facts, WhitServe reasons as follows: (i) Judge Mayer said that only the #468 and #078 patents should be found invalid under § 101, therefore, Judge Mayer would find that the #007, which he did not mention, is in fact valid under § 101; and (ii) because the #437 patent and the #007 patent share a common written description, I should find that the #437 patent is valid for the same unstated reasons Judge Mayer presumably found the #007 patent valid.

For several reasons, the dissent in *Computer Packages* is wholly irrelevant to the issues that I need to resolve. First, the #437 patent at issue in this case was not at issue in that case. Second, WhitServe is not relying on the majority opinion, but on a dissent. Third, the portion of the dissent on which WhitServe relies is

dicta, because the issue of patent eligibility was not before the appellate court. Fourth, the dicta on which WhitServe relies does not even mention the only patent in that case related to the patent in this case, i.e., the #007 patent. Finally, the *Computer Packages* case was decided two years before the Supreme Court's decision in *Alice* and, therefore, is not based on the legal standard that I must apply today. Accordingly, I find nothing helpful in *Computer Packages* with respect to the issues before me.

### 2. The United States Patent and Trademark Office

WhitServe argues that I should find the #437 patent eligible under § 101, because the USPTO examined and allowed the patent after the United States Supreme Court decided *Alice*. Assuming the USPTO subjected the #437 patent to an *Alice* review, which DropBox questions due to the timing of the notice, the date of the *Alice* decision, and the targeted review conducted by the USPTO, the USPTO's decision does not resolve the issue before me.

The USPTO's decision finding a patent eligible is not binding on this court. *Cf. Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court."); *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1385 (Fed. Cir. 2012) ("Suffice it to say here that the courts have the final say on unpatentability of claims, not the PTO."). Accordingly, courts regularly find patents ineligible under § 101

even though those patents had been previously examined and allowed by the USPTO. *See, e.g., Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 2019 WL 2896449 (Fed. Cir. July 5, 2019) (affirming district court decision that patents were ineligible under 35 U.S.C. § 101); *Athena Diagnostics*, 915 F.3d at 746 (Fed. Cir. 2019); *OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014). For those reasons, I do not find helpful in deciding the issue before me the mere fact that the USPTO has allowed the #437 patent.

## IV. CONCLUSION

For the foregoing reasons, I will grant Dropbox's motions to dismiss (D.I. 9). The Court will issue an Order consistent with this Memorandum.

Dated: July 25, 2019

_____
UNITED STATES DISTRICT JUDGE